MEMORY GARDENS OF LAS VEGAS, INC., a Nevada Corporation, Appellant, v. PET PONDEROSA MEMORIAL GARDENS, INC., a Nevada Corporation, Respondent.

No. 6461

January 3, 1972                    492 P.2d 123

*Wiener, Goldwater & Galatz,* and *Herbert L. Waldman,* of Las Vegas, for Appellant.

*John Peter Lee,* of Las Vegas, for Respondent.

## OPINION

By the Court, BATJER, J.:

On September 2, 1967, the appellant leased to the respondent approximately ten acres of land to be used as a pet cemetery. This land adjoined the appellant's human cemetery. By

agreement, the appellant allowed the respondent to use all available water for two hours each evening in order to develop and maintain the landscaping at the pet cemetery.

The record indicates that over 300 pets were buried in the cemetery at the time this action arose, and each individual who buried a pet paid an initial interment fee plus a fee of $2.50 per year for a period of up to ninety years to finance the maintenance of the property.

On February 1, 1970, the appellant summarily terminated the water supply to the respondent's property. Within a short period of time the grass, shrubs and trees dried up and died.

After the water supply had been cut off, the president of the respondent corporation attempted to renegotiate the lease agreement with the appellant, but to no avail. Attempts were also made to obtain the services of a water truck to haul water to the pet cemetery but that proved too expensive. The respondent contacted other water users in the area in an effort to purchase water from them but they were not able to spare any water from their wells.

On June 7, 1970, more than four months after the water supply had been terminated, the respondent commenced this lawsuit seeking injunctive relief and damages. After a hearing on the matter, the trial court entered its findings of fact and conclusions of law and granted a preliminary injunction requiring the appellant to allow the respondent the use of the entire water supply available at its cemetery for a period two hours each evening, seven days a week. The trial court indicated that the preliminary injunction was granted because there was no readily available source of water and no well could be drilled by the respondent without the consent of the appellant. It also found that the condition of the pet cemetery was such at the time of the hearing that many owners of pets interred therein could sue to enforce their contract rights requiring upkeep of the property, and that such suits were inestimable and could run into hundreds in number.

The appellant contends that the trial court erred in granting the preliminary injunction because the drying up of the grass and shrubbery had been accomplished and there remained no status quo to be maintained, and that the respondent had failed to show, at the time of the hearing, any irreparable injury.

Relying upon Sherman v. Clark, 4 Nev. 138 (1868) and Berryman v. Int'l. Bhd. Elec. Workers, 82 Nev. 277, 416 P.2d 387 (1966), the appellant contends that inasmuch as the grass and shrubbery were dead at the time of the hearing on the

motion for a preliminary injunction, the wrong, if any, had been completed, and if an injury has been completed a mandatory injunction can have no effect for it cannot be applied correctively so as to remove the wrong. The law enunciated in those cases is inapposite for here the injury was continuing because neither grass nor shrubbery will grow as long as water is withheld. Furthermore, the respondent would have been subject to a multiplicity of lawsuits by the owners of pets buried in its cemetery as long as the drought continued.

Status quo in this case was the growing lawn, plants and trees and that could only have been accomplished by restoring the water to the land. Unless the water was restored to the land it would lie barren and the injury to the respondent and its lessees would continue. Even if the act causing the injury has been completed before the action is instituted, a mandatory injunction may be granted to restore the status quo. City of Reno v. Matley, 79 Nev. 49, 378 P.2d 256 (1963). Injunctions of this type have frequently been employed in cases involving irrigation and water rights. Grosfield v. Johnson, 39 P.2d 660 (Mont. 1935). See also Sokel v. Nickoli, 79 N.W.2d 485 (Mich. 1956) (garage had already been built when suit instituted); Van De Carr v. Schloss, 101 N.Y.S.2d 48 (App. Div. 1950) (erection of boathouse); Harris v. Pierce, 73 So.2d 330 (La.Ct.App. 1954) (erection of building); Texas Co. v. Watkins, 82 S.W.2d 1079 (Tex.Ct.Civ.App. 1935); Baltimore & P.S. Co. v. Ministers, Etc., Starr M.P.Church, 130 A. 46 (Md.Ct.App. 1925).

The appellant's contention that the respondent failed to show irreparable injury is also without merit. Here the trial court found the irreparable injury to be the unavailability of other sources of water, a continuing barren landscape, and the possibility of multitudinous litigation.

Any act which destroys or results in a substantial change in property, either physically or in the character in which it has been held or enjoyed, does irreparable injury which justifies injunctive relief. See Lackaff v. Bogue, 62 N.W.2d 889 (Neb. 1954); Viestenz v. Arthur Tp., 54 N.W.2d 572 (N.D. 1952); Armbruster v. Stanton-Pilger Drainage District, 100 N.W.2d 781 (Neb. 1960); Faught v. Platte Valley Public Power & Irr. Dist., 25 N.W.2d 889 (Neb. 1947); Hood v. Foster, 13

So.2d 652 (Miss. 1943); and Roseberg v. American Hotel & Garden Co., 121 A. 9 (N.J.Ch. 1923). Rendering the pet cemetery barren and devoid of grass and shrubbery and keeping it in that condition was an irreparable physical change.

The avoidance of multiple lawsuits is also a justifiable basis for a mandatory injunction. See Home Finance Co. v. Balcom, 61 Nev. 301, 127 P.2d 389 (1942). Here there was a very definite possibility of multiple lawsuits against the respondent if the pet cemetery continued in a barren condition.

The appellant also claims that the respondent was guilty of laches because of the five-month delay between termination of the water supply and filing of the action. Such a delay not causing actual prejudice does not amount to laches. The alleged prejudice cannot be prospective or illusory. Rheinberger v. Security Life Ins. Co. of America, 51 F.Supp. 188 (N.D.Ill. 1943); McCavic v. DeLuca, 46 N.W.2d 873 (Minn. 1951); Sullivan v. Balestrieri, 298 P.2d 688 (Cal.App. 1956); and Scioscia v. Iovieno, 63 N.E.2d 898 (Mass. 1945). There is nothing in this record to show any prejudice whatsoever to the appellant, nor do we find any specific allegation of prejudice by the appellant. As a matter of fact, it appears that the delay was to appellant's benefit for during that period of time it had an extra volume of water to use on its cemetery.

The order of the district court is affirmed.

ZENOFF, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.