FRANK ROSENTHAL, Appellant, v. THE STATE OF
NEVADA, ex rel., the NEVADA GAMING COMMIS-
SION; and NEVADA GAMING CONTROL BOARD,
Respondents.

No. 11856

December 31, 1980                           620 P.2d 874

*Goodman, Oshins, Brown & Singer, Chartered,* Las Vegas,
for Appellant.

*Richard H. Bryan,* Attorney General, and *Patricia Becker*
and *Raymond D. Pike,* Deputy Attorneys General, Carson
City, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

This case is sequel to State of Nevada v. Rosenthal, 93 Nev. 36, 559 P.2d 830 (1977), where we noted the distinction between the status of one who seeks to acquire a gaming license and the status of one who possesses a work permit as a gaming employee. The former does not have existing privileges, but is attempting to acquire them. The latter does have an existing privilege and is entitled to receive notice and a hearing before his privilege to work as a gaming employee can be nullified. In that case we found it permissible for the Gaming Commission to deny Rosenthal's application to be licensed as a key employee of Argent Corporation, but impermissible automatically to revoke his work permit as a gaming employee without prior notice and an opportunity to be heard. The statutes and regulations then in effect which would allow such automatic revocation could not stand for want of fairness.

Because of that decision, Rosenthal could no longer direct the Nevada operations of Argent Corporation since he had been denied a state gaming license. He became Food and Beverage Director for the Stardust Hotel and later its Entertainment Director for a salary of $65,000 a year. Believing that Rosenthal, in the mentioned positions, continued to significantly influence gaming, the Commission deemed Rosenthal still to be a key employee and once again directed him to submit an application for a gaming license.

The Gaming Control Board and the Gaming Commission, meeting in joint session, denied Rosenthal a license. In reviewing that decision, the district court found that there was evidence to support a determination that Rosenthal was a key employee, and not suitable to be licensed. The court also found that Rosenthal's work permit had expired.[1]

On this appeal it is Rosenthal's primary contention that he has the right to work in the gaming industry, and that this right has been denied without due process of law.

1. Following the Rosenthal decision by this court the 1977 legislature amended the Gaming Control Act. (The legislature also amended the Act in 1979. All references herein are to the 1977 enactments.) A portion of the reworded Act, NRS 463.165 and 463.560, provides that if an employee required to be licensed is denied a license because of lack of good character, honesty or integrity, the gaming licensee by whom he is employed shall terminate his employment upon notification by registered or certified mail to the licensee of that action.

Such an automatic revocation of one's privilege to work as a gaming employee in a capacity other than that of a key employee was condemned by this court in the first Rosenthal case under statutes and regulations then in effect. In our view NRS 463.165 and 463.560 are equally infirm for want of procedural due process.

Here, as in the first Rosenthal case, the hearing before the Board and Commission was focused upon the suitability of Rosenthal to be licensed as a key employee. His right to work in a capacity other than that of a key employee was not in issue at all. We therefore conclude that Rosenthal may continue to enjoy a work permit as a gaming employee. As in the first case, our conclusion shall not be construed to preclude further action by the gaming authorities to revoke his work permit should they deem such action advisable.

2. Rosenthal interposed objection to the hearing before the Gaming Control Board and the Gaming Commission in joint

---

[1]The finding that Rosenthal's work permit had expired appears to have been a gratuitous act on the part of the district court. His work permit could only expire if he failed to work as a gaming employee for a period of 90 days. NRS 463.337(10). The finding is inconsistent with and contradicts the fundamental holding of the court that Rosenthal was so involved in gaming that he qualified as a key employee.

session. The statutory procedures do not appear to contemplate a hearing before the two bodies in joint session.

The Gaming Control Board performs an investigatory function, and makes recommendations to the Gaming Commission. NRS 463.210. If the Board recommends denial, it should file written reasons for its recommendation with the Commission. NRS 463.210(2). The Commission may deny the application, remand the matter back to the Board for further investigation, or grant approval. NRS 463.220(4). If the Gaming Commission is not satisfied that the applicant is qualified for licensing, the Gaming Commission may conduct a hearing. NRS 463.220(5).

The regulatory scheme appears to contemplate that proceedings before the Commission shall be subsequent to and separate from proceedings before the Board. However, this record does not disclose prejudice to Rosenthal by reason of the joint meeting of the two bodies. Each body deliberated and voted separately. Consequently, we conclude that the fact of a joint hearing provides no basis for this court to annul the administrative determination.

3.  We need not consider other assigned errors.

The judgment of the district court is affirmed in so far as it upholds the decision of the Nevada Gaming Commission that Rosenthal, as a key employee, is not suitable to be licensed. That part of the judgment which affirms an automatic revocation of Rosenthal's work permit is reversed and set aside.

MOWBRAY, C. J., and BATJER, J., concur.

MANOUKIAN, J., concurring:

I am in accord with the views expressed in the majority opinion. However, I wish to add a note regarding our affirmance of that part of the trial court's grant of declaratory relief to respondents, which upheld the Nevada Gaming Commission's denial of appellant's application for a gaming license and our reversal of the determination concerning the work permit.

The gaming industry is one which is subject to complete and careful control by the state due to criminal elements commonly involved in the industry. Nevada Tax Comm'n v. Hicks, 73 Nev. 115, 119, 310 P.2d 852, 854 (1957). Thus, individuals desiring to be employed by or to operate a business in the industry are necessarily required to submit to rigid investigation and regulation. That degree of scrutiny increases when an individual occupies a key position in the industry.

Here, the record shows *inter alia* that Rosenthal appeared at the payoff window of the racebook when a gaming official

questioned the racebook's refusal to pay a wager; that Rosenthal questioned gaming officials' authority to examine work permits; that he was observed standing in the casino pit; and that he telephoned gaming officials to complain about gaming agents and accompanied Stardust employees to United Coin to view a new type of electronic scoreboard. I agree with the Gaming Commission's determination, as characterized by the majority, that Rosenthal "continued to significantly influence gaming." I too believe that there was cause for the Commission's summoning of Rosenthal to submit an application for a gaming license and that there existed evidence to support a determination that Rosenthal was a key employee and was unsuitable for licensing.

Moreover, in my view, the legislature could properly conclude that a person who cannot meet the requirements to occupy a key position with an employer, cannot be employed in any position by that employer and remain divorced from the decisions made in running the gaming business of that employer. As such, our statutes can be read to prohibit further employment in any capacity of a person whose application for a license to be employed in a key position is denied. Nevertheless, although it is convincingly argued that the statutes themselves provide sufficient notice of the result of a denial of an application and the hearing for the license is a sufficient hearing for the work permit revocation, I also concur with the majority that specific notice and an opportunity to be heard are preconditions to revocation of this existing right. State v. Rosenthal, 93 Nev. at 46, 559 P.2d at 837. See NRS 463.337.

GUNDERSON, J., concurring in part:

I can agree that NRS 463.165 and 463.560 are infirm for want of procedural due process. Thus, I can agree that Mr. Rosenthal may continue to enjoy a work permit as a gaming employee.

I can also agree Nevada's statutory scheme, by which gaming is regulated, contemplates that proceedings of the Commission shall be subsequent to and separate from proceedings before the Board. However, this being so, I am unsure how the conduct of joint proceedings, contrary to the regulatory scheme, may be viewed as harmless error. If I were only able to grasp that point, I could endorse the majority opinion.